

# The Attorney General of Texas

March 8, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Don R. Stiles
Executive Director
Texas Adult Probation Commission
P. O. Box 12427
Austin, Texas    78711

Opinion No.  JM-3

Re:  Whether a district adult probation department may use judicial district funds to purchase real property to use as a community based correctional facility

Dear Mr. Stiles:

You have asked these questions:

1.  Can a district adult probation department utilize judicial district funds to purchase land and/or buildings for use by the department as a community based correctional facility other than a jail or prison?  If the answer is yes, who would hold title to the land and/or building?

2.  Can a district adult probation department utilize judicial district funds to build a building, or to purchase and place a manufactured building, either mobile or fixed and attached to a foundation, upon land leased from a county, private citizen, company or corporation to be used by the department as a community based correctional facility other than a jail or prison? If the answer is yes, who would hold title to the building?

You have informed us that the term "judicial district funds" refers to the "state aid" which is authorized by article 42.121 of the Code of Criminal Procedure.

Article 42.12 of the Code of Criminal Procedure created adult probation departments in the judicial districts of this state.  Sec. 10(a).  Section 10(g) of article 42.12 provides in pertinent part:

It shall be the responsibility of the county or counties comprising the judicial district or

> geographical area served by such district probation department to provide <u>physical facilities</u>, equipment, and utilities for an effective and professional adult probation <u>and adult community-based correctional service</u>. (Emphasis added).

In Attorney General Opinion H-1218 (1978), this office construed this provision, which at that time was part of section 10(f) of article 42.12, in the following manner:

> In our opinion, this provision requires the counties to provide, <u>from their own funds</u> and not from probation fees, the <u>physical facilities</u>, equipment, and utilities <u>needed for the probation office</u>. All other expenses are to be paid from district funds, which include probation fees. Testimony before a legislative committee indicated that Senate Bill No. 39 <u>made the county responsible for facilities</u>, utilities, and equipment, while the state was to be responsible for salaries, benefits, supplies, travel, and training. Tape of public hearing on S.B. 39, House Criminal Jurisprudence Committee, March 29, 1977. <u>See also</u> Joint Advisory Committee on Governmental Operations -- Subcommittee on Corrections, <u>supra</u>. (Emphasis added).

<u>See also</u> Attorney General Opinion MW-92 (1979). This opinion technically dealt only with the responsibility of the counties vis-a-vis "probation offices," but its reasoning is equally applicable to an "adult community-based correctional service," since this term is contained in the same portion of section 10(g) that refers to a "probation" service. Accordingly, we believe that section 10(g) imposes upon the counties which comprise "the judicial district or geographical area served by such district probation department" the responsibility of providing, <u>inter alia</u>, the "physical facilities" which are necessary for an "effective and professional . . . adult community-based correctional service." In our opinion, buildings needed to house community-based correctional programs and services and the land upon which these buildings are situated constitute "physical facilities" within the meaning of section 10(g). It therefore follows that the responsibility for providing them rests with the county or counties to which section 10(g) refers.

As we read your correspondence to this office, you essentially acknowledge that the counties are responsible for providing "physical facilities" for an effective adult community-based correctional service. You contend, however, that state-aid furnished to judicial

districts under article 42.121 may also be used to establish such a facility. Admittedly, there is language in this article which can be read as supporting this conclusion. In our opinion, however, the legislature did not intend this language to be construed this broadly.

Section 1.01 of article 42.121 provides:

> The purposes of this article are to make probation services available throughout the state, to improve the effectiveness of probation services, to provide alternatives to incarceration by providing financial aid to judicial districts for the establishment and improvement of probation services and community-based correctional programs and facilities other than jails or prisons, and to establish uniform probation administration standards. (Emphasis added).

See §4.01 (definition of "state-aid"). Section 4.03 provides:

> The district judge or judges in each judicial district shall present data to the commission, determined by the commission, which is necessary to determine the amount of state financial aid needed for use in maintaining and improving probation services and community-based correctional programs and facilities other than jails or prisons in the district.

Section 4.05 provides in part:

> (b) The fiscal officer designated for the district shall deposit all state-aid received under this article in a special fund of the county treasury, to be used solely for the provision of adult probation services and community-based correctional programs and facilities other than jails or prisons.

You suggest that authority for adult probation departments to use state-aid for the purposes which you described in your questions can be found in the foregoing provisions, which authorize the use of such aid for, inter alia, the "establishment" of community-based correctional "facilities." As noted, however, we disagree.

We first note that the legislative history of article 42.121 suggests that the legislature did not intend "state-aid" to be used to provide "physical facilities" in which to house community-based correctional services and programs. See Code Construction Act,

V.T.C.S. art. 5429b-2, §3.03(3) (legislative history may be considered in construing code provision). In testimony on the proposed statute before the House Committee on Criminal Jurisprudence, a representative of the Texas Correctional Association stated:

> The [Adult Probation Commission] would be a standard-setting agency that would subsidize probation services in each judicial district and each judicial district would maintain its autonomy. All judicial districts would have adequate probation services for the supervision and control of felons and misdemeanants. The county's responsibility would be to provide facilities, equipment, and utilities, while state aid would provide salaries, benefits, supplies, mileage for travel, training, etc. This effort parallels to a great degree the functions of the Texas Education Agency as it relates to the standard-setting agency and the distribution of funds while having local control and autonomy with the local district. (Emphasis added).

Tape of public hearing on S.B. No. 39, supra. This testimony indicates that the legislature's intent in enacting articles 42.12 and 42.121 was to assign to both the counties and the state (acting through the Adult Probation Commission and, in turn, the judicial districts) certain specific responsibilities connected with the provision of community-based correctional services, and that the provision of "physical facilities" needed for such services is among the specific responsibilities of the counties. This was, of course, the thrust of Attorney General Opinion H-1218 (1978).

We also believe that if the legislature had intended to allow state-aid to be used to build or purchase "physical facilities" for community-based correctional programs, it would have provided answers to the many questions which would arise from this practice, i.e., (1) may a probation department use state-aid to purchase land or buildings at any time, or must it wait until a county certifies that it is unable to provide necessary "physical facilities"? (2) if a judicial district may make such purchases, in whose name would title be held? The fact that article 42.121 in no way addresses these issues persuades us that its provisions should not be interpreted as broadly as you suggest. In this context, we also note that although section 1.01 does contain language which arguably supports your conclusion, the language of section 4.03 cuts the other way. This provision states that the state-aid for which the judicial districts may apply is that needed for use in "maintaining and improving" probation services and community-based programs and facilities. "Maintaining

and improving," in our opinion, neither denotes nor connotes "purchasing" or "building."

In short, we conclude that the legislature most likely intended article 42.121 state-aid to be used to establish, maintain, or improve probation and community-based correctional programs and services, not to purchase or build "physical facilities" in which to house them. The provision of these facilities is among the specific responsibilities of the counties.  Attorney General Opinion H-1218 (1978).

### S U M M A R Y

Judicial districts are not authorized to use state-aid obtained under article 42.121 of the Code of Criminal Procedure to purchase land or buildings in which to house community-based correctional programs and services.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
David Harris
Jim Moellinger